AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br><br>Blue Oppo Smartphone<br>Model: Unknown<br>With no identifying numbers or features</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.  <b>2:24-mj-08045-SBC</b></td></tr>
</table>

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Moncerad Soto incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Border Patrol Agent Moncerad Soto
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____01/17/2024_____

_____
*Judge's signature*

City and state:  San Diego, California

HON. STEVE B. CHU, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2**:                Blue Oppo Smartphone
                        Model: Unknown
                        With no identifying numbers or features
                        Seized from Veronica APARICIO-Aranda
                        **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 6, 2023, up to and including December 6, 2023, and is limited to the following:

a.      tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.      tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.      tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.      tending to identify the user of, or persons with control over or access to, the Target Device;

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

### AFFIDAVIT

I, Moncerad Soto, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

### INTRODUCTION

1.      I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1**:                        Blue Samsung
                                Model: Unknown
                                With no identifying numbers or features
                                Seized from Paulo Cesar DIAZ-Medina
                                **(Target Device #1)**

**A-2**:                        Blue Oppo Smartphone
                                Model: Unknown
                                With no identifying numbers or features
                                Seized from Veronica APARICIO-Aranda
                                **(Target Device #2)**

**A-3**:                        Blue Huawei Cellphone
                                Model: Unknown
                                With no identifying numbers or features
                                Seized from Ernesto GOMEZ-Nieves
                                **(Target Device #3) (Collectively "Target Devices")**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.      The requested warrant relates to the investigation and prosecution of Paulo Cesar DIAZ-Medina (DIAZ) and Carlos Manuel VERDUZCO (VERDUZCO) for transportation of illegal aliens Veronica APARICIO-Aranda (APARICIO) and Ernesto GOMEZ-Nieves (GOMEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from DIAZ and the Material Witnesses on or about December 5, 2023, incident to the arrest of DIAZ, VERDUZCO and the Material Witnesses. The Target Devices are currently in

1

the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2016, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational

habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.    The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity

Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On December 5, 2023, Border Patrol Agents assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #2 (ASU) were conducting surveillance in Calexico, California. The ASU wears plain clothes and drives unmarked Service vehicles to blend in with the general public. ASU conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley.

11. At approximately 4:45 p.m., Border Patrol Agent (BPA) A. Botello observed a white Nissan Sentra (Nissan) bearing California license plates parked on Pine Avenue in Holtville, California. BPA A. Botello conducted research on the license plate and observed that it was registered out of Los Angeles, California, which is approximately 220 miles away from Holtville. Further research and analysis revealed that the Nissan had no recent USBP Checkpoint or International Port of Entry crossings.

12. After conducting research and analysis on the Nissan, BPA A. Botello informed additional ASU Agents of his observation and initiated static surveillance on the Nissan in anticipation that the Nissan would travel towards Interstate 8 or Highway 98 and pick up illegal aliens. While the Nissan remained parked in Holtville, California, BPA A. Botello observed the driver, later identified as Paulo Cesar DIAZ-Medina (DIAZ) aimlessly walking around the street and in and out of an alley while conversing on his cell phone. ASU Agents continued conducting static surveillance on the Nissan for approximately thirty minutes before it reversed out of it parking spot and began travelling away from Holtville, California on Highway 115 towards Interstate 8.

13. ASU Agents kept constant visual on the Nissan as it merged onto the eastbound lanes of Interstate 8 and began travelling towards Yuma, Arizona. As the Nissan continued travelling eastbound, ASU Agents notified Calexico Border Patrol Agents on the Calexico East radio frequency that they were following the Nissan, which they suspected would be attempting to pick up illegal aliens into their Area of Responsibility. While conducting mobile surveillance on the Nissan, the Calexico Remote Video Surveillance System Operator (RVSS) informed ASU Agents that they observed two

1    suspected illegal aliens running away from the United States/Mexico International
2    Boundary Fence (IBF) towards the All-American Canal south of Interstate 8, west of the
3    Brocks Research Center Road Exit. While 841 continued to inform ASU Agents of their
4    observation, ASU Agents continued to keep constant visual on the Nissan as it continued
5    to travel eastbound on Interstate 8 at a slow rate of speed.

6         14.    RVSS continued to monitor the two suspected illegal aliens and watched as
7    they reached the south bank of the All-American Canal and entered the water. While the
8    two suspected illegal aliens continued to enter and exit the All-American Canal, it became
9    evident that they did not want to swim across. RVSS observed that it appeared that one of
10   the suspected aliens was having trouble swimming across. As the two suspected illegal
11   aliens continued entering and exiting the water, the Nissan passed the Brocks Research
12   Center Road Exit and travelled to the rest area where it parked.

13        15.    After the Nissan parked, ASU Agents observed DIAZ exit the Nissan and
14   stand outside of the Nissan for approximately twenty minutes while conversing on his cell
15   phone. ASU Agents strategically parked their unmarked service vehicles in and around the
16   area and kept constant visual on DIAZ and the Nissan while RVSS continued to monitor
17   the two suspected illegal aliens. After an extended period of time, ASU Agents observed
18   DIAZ reverse from his parking spot, circle the rest area, merge onto the westbound lanes
19   of Interstate 8 and begin travelling back westbound on Interstate 8.

20        16.    As the Nissan continued travelling westbound, RVSS informed ASU Agents
21   that the two suspected illegal aliens were now walking eastbound towards Drop 2. Drop 2
22   is a hydroelectric power plant that is utilized for irrigation purposes. Drop 2 also allows
23   vehicle traffic as well as pedestrian traffic to cross from the northside of the All-American
24   Canal to the southside of the All-American Canal. As the Nissan continued travelling
25   towards the Brocks Research Center Road exit, which is just west of Drop 2, RVSS
26   informed ASU Agents that the two suspected illegal aliens were now running northbound
27   across Drop 2. ASU Agents kept constant visual on the Nissan as it continued travelling
28   westbound towards the two suspected illegal. The two suspected illegal aliens attempted to

conceal themselves on the northside of Interstate 8, and the Nissan travelled towards them, began flashing the headlights, slowed down and began to pull over.

17.     As the Nissan approached the two suspected illegal aliens, the two suspected illegal aliens stood up and ran to the shoulder of Interstate 8. Both RVSS and ASU Agents watched as the Nissan came to a complete stop and the two suspected illegal aliens ran to the Nissan and entered the Nissan. After the two suspected illegal aliens entered the Nissan, both RVSS and ASU Agents watched as the Nissan merged back onto the westbound lanes of Interstate 8 and continued travelling westbound towards El Centro, California.

18.     ASU Agents continued mobile surveillance on the Nissan and kept constant visual on the Nissan as travelled westbound on Interstate 8, exited Interstate 8 at the 4th Street Exit, travelled northbound on 4th Street and entered the parking lot of Lucky Chinese Restaurant, located in El Centro, California. As the Nissan entered the parking lot, ASU Agents observed that there was a  black Chevrolet Impala (Impala) bearing California license plates that immediately stated flashing its brake lights as the Nissan approached it. Upon observing this, ASU Agents firmly believed that the Impala was parked in the parking lot to receive the suspected illegal aliens. It should be noted that the restaurant was closed, and the black Impala was the only vehicle in the parking lot.

19.     As the Nissan parked next to the Impala, ASU Agents strategically parked their unmarked service vehicle in and around the area and watched as the driver of the Impala, later identified as Carlos Manuel VERDUZCO (VERDUZCO) exited the Impala, approached DIAZ, opened the front passenger door of the Nissan, and began conversing with DIAZ. After a brief conversation, ASU Agents watched as VERDUZCO opened the back passenger's door of the Nissan, walked back to the Impala, opened the back passenger door of the Impala, and entered the driver's seat of the Impala while the two suspected illegal aliens, later identified as  Ernesto GOMEZ-Nieves (GOMEZ) and Veronica APARICIO-Aranda (APARICIO) walked from the Nissan to the Impala and enter the Impala.

20.    ASU Agents recognized this action as a body transfer. In many alien smuggling schemes, a driver is hired to pick up the aliens from the immediate border area. The driver is then instructed to drive to a pre-designated meeting area or transfer location. Once the driver arrives, a second smuggler arrives, and the aliens are transferred from one vehicle to another and then delivered to a stash house.

21.    After GOMEZ and APARICIO entered the Impala, VERDUZCO drove in reverse, however ASU Agents converged on the parking lot with the lights and sirens of their unmarked vehicles activated to conduct a vehicle stop on both the Nissan and Impala and perform an immigration inspection on all occupants within the Nissan and Impala. Once the Impala was mobile, ASU Agents firmly believed that both vehicles were involved in alien smuggling and the illicit transportation of illegal aliens within the United States.

22.    ASU Agents approached both vehicles with Border Patrol markings and insignia fully visible while Calexico Border Patrol Agents and El Centro Border Patrol Agents approached both vehicles in full rough duty uniform. BPA A. Garcia identified himself as a Border Patrol Agent to DIAZ and questioned him as to his citizenship. DIAZ stated that he is a citizen of Chile and had an ongoing immigration case for his Lawful Permanent Resident Status. BPA L. Heipt identified himself as a Border Patrol Agent to VERDUZCO and questioned him as to his citizenship. VERDUZCO stated he was a United States citizen. BPA A. Botello identified himself as a Border Patrol Agent to GOMEZ and APARICIO and questioned them as to their citizenship. GOMEZ and APARICIO admitted that they were citizens of Mexico. GOMEZ and APARICIO admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry.

23.    Paulo Cesar DIAZ-Medina and Carlos Manuel VERDUZCO were arrested for 8 USC 1324 alien smuggling. Paulo Cesar DIAZ-Medina, Carlos Manuel VERDUZCO and the two smuggled aliens were transported the Calexico Border Patrol Station for further questioning and processing.

24.    On December 5, 2023, DIAZ was advised of his Miranda rights in the Spanish language by BPA H. Torres and witnessed by BPA I. Monzon. DIAZ stated he understood his rights and agreed to speak without the presence of and attorney. DIAZ stated he is a citizen of Chile and currently has an Employment Authorization Card and a Permanent Resident Card pending. DIAZ admitted having knowledge and agreeing to pick up and transporting two illegal aliens on today's date for monetary compensation of $1,800 United States Dollars (USD) for picking up four individuals and transporting them to another place. DIAZ stated for today's alien smuggling event, he was being guided via cellphone by an associate named Javier. DIAZ stated he was instructed to stop at a certain spot and pick up people. DIAZ also stated he was to drive to Lucky Chinese Food and drop them off to a black vehicle. DIAZ stated a male subject got the individuals from his vehicle and put them in his vehicle.

25.    On December 5, 2023, VERDUZCO was advised of his Miranda rights by BPA M. Clinton. VERDUZCO stated that he understood his rights and agreed to speak without the presence of an attorney. VERDUZCO stated he was born in Brawley, California. VERDUZCO stated an old acquaintance from high school named Izaak contacted him to watch some people, in which he first declined but later accepted the job. VERDUZCO stated he was drinking in his vehicle at the Lucky Chinese restaurant parking lot and told Izaak his location. VERDUZCO then stated an unknown number began calling him and was told that a white vehicle was going to arrive. VERDUZCO stated he was instructed to take the individuals from the white vehicle and place them into his vehicle. VERDUZCO admitted he knew the person calling him was involved in alien smuggling. VERDUZCO stated he did not know what he was going to do with the illegal aliens once they were in his car and said he was just going to wait there with them. VERDUZCO also stated that he was not told if he was going to be paid for the job and did not discuss that with Izaak.

26.    GOMEZ acknowledged that his statement was being recorded and was willing to speak with Agents. GOMEZ stated he is a citizen of Mexico. GOMEZ stated the

1   smuggling arrangements were done by himself back in Mexicali, Mexico. GOMEZ stated

2   that he was going to pay $100,000 Mexican Pesos to be smuggled to Las Vegas, Nevada.

3   During the interview BPA H. Torres noticed that GOMEZ was having difficulty

4   understanding the Spanish language.  GOMEZ stated he speaks a dialect from Guerrero,

5   Mexico.  The interview ended because of the language barrier.

6        27.     APARICIO acknowledged that her statement was being recorded and was

7   willing to speak with Agents. APARICIO stated she is a citizen of Mexico. APARICIO

8   stated she made smuggling arrangements and she intended to pay a smuggling fee of $9,000

9   US Dollars. APARICIO stated she was being smuggled to the state of Washington.

10        28.     During a search incident to arrest of DIAZ, VERDUZCO and the Material

11   Witnesses, three cellphones were located. BPA C. Monzon located a blue Samsung (Target

12   Device #1) in the glovebox of the Nissan and DIAZ claimed ownership of this cellphone.

13   One blue Oppo Smartphone (Target Device #2) was found on APARICIO's person and

14   one blue Huawei Cellphone (Target Device #3) was found on GOMEZ's person by BPA-

15   I A. Botello. APARICIO and GOMEZ both claimed ownership of their respective

16   cellphones and they were seized as evidence.

17        29.     I am aware that smuggling conspiracies require planning to successfully

18   evade detection by law enforcement.  In my professional training and experience, this may

19   require planning and coordination in the days and weeks prior to the event.  Additionally,

20   co-conspirators are often unaware of the subject's arrest and will continue to attempt to

21   communicate with the subject after the arrest to determine their whereabouts.  Given this,

22   I respectfully request permission to search the Target Devices for data beginning on

23   November 6, 2023, up to and including December 6, 2023, the day after the arrest of DIAZ,

24   VERDUZCO and the Material Witnesses.

25                          **METHODOLOGY**

26        30.     It is not possible to determine merely by knowing the cellular telephone's

27   make, model and serial number, the nature, and types of services to which the device is

28   subscribed, and the nature of the data stored on the device. Cellular devices today can be

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

31.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

32.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

**CONCLUSION**

33.     Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that DIAZ and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by DIAZ, VERDUZCO, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Moncerad Soto Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 17th day of January, 2024.

_____
HON. STEVE B. CHU
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1**:          Blue Samsung
                Model: Unknown
                With no identifying numbers or features
                Seized from Paulo Cesar DIAZ-Medina
                **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2**:            Blue Oppo Smartphone
               Model: Unknown
               With no identifying numbers or features
               Seized from Veronica APARICIO-Aranda
               **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:                    Blue Huawei Cellphone
                       Model: Unknown
                       With no identifying numbers or features
                       Seized from Ernesto GOMEZ-Nieves
                       **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 6, 2023, up to and including December 6, 2023, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.